UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JOE HAND PROMOTIONS, INC.,

            Plaintiff,

     v.

JACOB EVANS ALBRIGHT,
INDIVIDUALLY and d/b/a MINERS
RANCH SALOON,

            Defendant.

_____/

NO. CIV. 2:11-2260 WBS CMK

MEMORANDUM AND ORDER RE:
CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

----oo0oo----

          Plaintiff Joe Hand Promotions, Inc., brought this
action against defendant Jacob Evans Albright, individually and
doing business as Miners Ranch Saloon, arising from defendant's
allegedly unauthorized public exhibition of a televised sporting
event.  Plaintiff now moves for partial summary judgment on its
federal anti-piracy claims and common law conversion claim
pursuant to Federal Rule of Civil Procedure 56.  Defendant moves
for partial summary judgment on numerous issues related to
plaintiff's requests for relief.

1

I.    Relevant Facts

          Plaintiff was granted the exclusive nationwide
commercial distribution rights to "Ultimate Fighting Championship
118: Frankie Edgar v. BJ Penn 2," including all undercard bouts
and fight commentary, (the "Program"), (Riley Decl. in Supp. of
Pl.'s Mot. Ex. 2 ("Pl.'s Resp. to Req. for Produc.") (Docket Nos.
15-4, 15-5)), which was televised via closed-circuit television
on August 28, 2010, (Compl. ¶ 9 (Docket No. 1)).  Defendant is
the owner of Miners Ranch Saloon, an establishment located at
5250 Olive Highway, Oroville, California.  (See Guynes Aff. at 1
(Docket No. 15-6); Albright Decl. ¶ 2 (Docket No. 18-1).)  Miners
Ranch Saloon had an antenna and satellite dish, but as a result
of a fire, any records to identify a satellite television service
provider were destroyed.  (Riley Decl. in Supp. of Pl.'s Mot. Ex.
1 ("Def.'s Resp. to Special Interrogs.") at 5 (Docket No. 15-5).)

          According to the affidavit of investigator Christian
Guynes submitted by plaintiff, Guynes visited Miners Ranch Saloon
on August 28, 2010, at 8:50 p.m.  (Guynes Aff. at 1.)  When he
arrived, the Program was being shown on five televisions.  (Id.)
While he did not pay any cover charge to enter the Saloon, he did
order one drink.  (Id.)  Guynes states that there were around
twenty-five other patrons present in the Saloon, although he
observed its capacity to be approximately eighty people.  (Id. at
2.)

          Defendant states that to his knowledge there was no
interception or theft of a television signal at Miners Ranch
Saloon.  (See Albright Decl. ¶ 2.)  He believed that the Saloon
had "a legitimate and lawful television service" and therefore

2

"anything that would have been displayed on televisions there was appropriately paid for and legal." (Id.)   Further, he "was not personally involved in the day-to-day operations of Miners Ranch Saloon, and for that reason [] was not in control of what was being shown on the [televisions] . . . ."   (Id.)

On August 25, 2011, plaintiff filed this action against defendant, asserting claims for (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210.   Plaintiff now moves for partial summary judgment as to its claims under §§ 553 and 605 and for conversion. (Docket No. 15.)   Defendant moves for partial summary judgment as to plaintiff's claim for violation of the UCL and its requests for enhanced statutory damages under §§ 553 and 605, punitive damages, and attorney's fees pursuant to California Code of Civil Procedure section 1021.5.   (Docket No. 16.)   It also requests that the court find that plaintiff cannot recover for violations of both §§ 553 and 605 and that plaintiff cannot recover for both a statutory violation, either § 553 or § 605, and for conversion.   (Id.)

II.   Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3

1   (1986).  The party moving for summary judgment bears the initial

2   burden of establishing the absence of a genuine issue of material

3   fact and can satisfy this burden by presenting evidence that

4   negates an essential element of the non-moving party's case.

5   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

6   Alternatively, the moving party can demonstrate that the

7   non-moving party cannot produce evidence to support an essential

8   element upon which it will bear the burden of proof at trial.

9   Id.

10          Once the moving party meets its initial burden, the

11  burden shifts to the non-moving party to "designate 'specific

12  facts showing that there is a genuine issue for trial.'"  Id. at

13  324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

14  the non-moving party must "do more than simply show that there is

15  some metaphysical doubt as to the material facts."  Matsushita

16  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

17  "The mere existence of a scintilla of evidence . . . will be

18  insufficient; there must be evidence on which the jury could

19  reasonably find for the [non-moving party]."  Anderson, 477 U.S.

20  at 252.

21          In deciding a summary judgment motion, the court must

22  view the evidence in the light most favorable to the non-moving

23  party and draw all justifiable inferences in its favor.  Id. at

24  255.  "Credibility determinations, the weighing of the evidence,

25  and the drawing of legitimate inferences from the facts are jury

26  functions, not those of a judge . . . ruling on a motion for

27  summary judgment . . . ."  Id.

28  ///

4

1  III.  Analysis

2       A.   47 U.S.C. §§ 553, 605

3            1.   Plaintiff violated § 605

4            Section 553(a)(1) provides that "[n]o person shall

5  intercept or receive or assist in intercepting or receiving any

6  communications service offered over a cable system, unless

7  specifically authorized to do so by a cable operator or as may

8  otherwise be specifically authorized by law."  47 U.S.C. §

9  553(a)(1).  "In other words, section (a)(1) prohibits both

10 illegally receiving cable programming and helping others to

11 illegally receive cable programming by manufacturing or

12 distributing equipment that allows a person to receive cable

13 programming without authorization."  J & J Sports Prods., Inc. v.

14 Manzano, No. C-08-01872, 2008 WL 4542962, at *2 (N.D. Cal. Sept.

15 29, 2008).

16           Section 605 provides in relevant part:

17           [N]o person receiving . . . any interstate or foreign
             communication by wire or radio shall divulge or publish
18           the existence, contents, substance, purport, effect, or
             meaning thereof, except through authorized channels of
19           transmission or reception, (1) to any person other than
             the addressee, his agent, or attorney . . . .  No person
20           not being authorized by the sender shall intercept any
             radio communication and divulge or publish the existence,
21           contents, substance, purport, effect, or meaning of such
             intercepted communication to any person.  No person not
22           being entitled thereto shall receive or assist in
             receiving any interstate or foreign communication by
23           radio and use such communication (or any information
             therein contained) for his own benefit or for the benefit
24           of another not entitled thereto.  No person having
             received any intercepted radio communication or having
25           become acquainted with the contents, substance, purport,
             effect, or meaning of such communication (or any part
26           thereof) knowing that such communication was intercepted,
             shall divulge or publish the existence, contents,
27           substance, purport, effect, or meaning of such
             communication (or any part thereof) or use such
28           communication (or any information therein contained) for

                                  5

1   his own benefit or for the benefit of another not
    entitled thereto.
2   47 U.S.C. § 605(a).

3        "The Federal Communications Act, 47 U.S.C. § 605 et

4   seq., prohibits commercial establishments from intercepting and

5   broadcasting to its patrons satellite cable programming."

6   Kingvision Pay-Per-View v. Guzman, No. C 09-00217, 2009 WL

7   1475722, at *2 (N.D. Cal. May 27, 2009).  Although § 605 did not

8   originally address television signal piracy, amendments made to

9   the statute in the 1980's "extended [its] reach to the

10  unauthorized reception or interception of television

11  programming."  DirecTV, Inc. v. Webb, 545 F.3d 837, 843 (9th Cir.

12  2008).

13       Under §§ 553 and 605, a "[p]laintiff need not establish

14  'willfulness' in order to establish liability."  Joe Hand

15  Promotions, Inc. v. McInnis, 10-CV-01614-LHK, 2011 WL 1740109, at

16  *7 (N.D. Cal. May 5, 2011); see J & J Sports Prods., Inc. v.

17  Delgado, CIV. 2:10-2517 WBS, 2012 WL 371630, at *3 (E.D. Cal.

18  Feb. 3, 2012) (Shubb, J.) ("Both § 553 and § 605 are strict

19  liability statutes.").  Under each statute, aggrieved parties may

20  bring a civil cause of action against violators.  47 U.S.C. §§

21  553(c)(1), 605(e)(3)(A).

22       It is undisputed that defendant is the owner of Miners

23  Ranch Saloon, where the Program was allegedly shown.  (See

24  Albright Decl. ¶ 2.)  Defendant is being sued in his capacity as

25  owner of the establishment.  Defendant argues, however, that he

26  cannot be liable under §§ 553 or 605 unless plaintiff establishes

27  that he had control over the televisions in the Saloon at the

28  time of the alleged signal piracy, authorized the violation, and

derived a benefit from the alleged signal piracy.  (Def.'s Opp'n at 2:4-10 (Docket No. 18).)  To this point, defendant states that he "was not personally involved in the day-to-day operations of Miners Ranch Saloon . . . ."  (Albright Decl. ¶ 2.)  He also states that he was not in control of the televisions at the time of the alleged violation, did not authorize any violation, and did not receive any financial benefit from any alleged television piracy.  (Id.)

        The elements identified by defendant are usually considered by courts where a plaintiff attempts to hold both a corporation and an individual liable for a violation of § 553 or § 605.  See, e.g., Delgado, 2012 WL 371630, at *4 n.2 (explaining what plaintiff must show to establish individual liability in addition to holding the offending commercial establishment responsible); Kingvision Pay-Per-View Ltd. v. Villalobos, 554 F. Supp. 2d 375, 381 (E.D.N.Y. 2008) (where claims under §§ 553 and 605 were brought against both a corporate identity and an individual, the individual could be held liable where he had supervisory capacity and control over the corporation and received financial benefit from its operations).  In contrast, the entity that allegedly broadcast the Program in this case is not a corporation, but an individual "doing business as."  The "doing business as" designation is merely descriptive of the person or corporation who does business under some other name. Pinkerton's, Inc. v. Superior Court, 49 Cal. App. 4th 1342, 1348 (4th Dist. 1996).  "Doing business under another name does not create an entity distinct from the person operating the business. . . .  The business name is a fiction, and so too is any

1   implication that the business is a legal entity separate from its

2   owner."  Id. (internal quotation marks and citation omitted).

3       "It was [defendant's] commercial establishment that

4   broadcast the Program without authorization and, having chosen

5   not to organize h[is] business as a corporation or other form

6   that would create a legal identity separate from its owners, []he

7   may be held liable for its wrongdoing."  Delgado, 2012 WL 371630,

8   at *4.  Defendant may not avoid liability by testifying that he

9   was not involved in the quotidian operations of Miners Ranch

10  Saloon and did not authorize the Program to be shown there.  See

11  id. (defendant liable under § 605 even though absent from

12  restaurant on the night television signal was intercepted and she

13  never authorized its broadcast).  Further, whether defendant knew

14  of the broadcast is irrelevant for determining liability,

15  although if it is later found that he acted unknowingly, damages

16  may be reduced under § 553 or § 605.  See 47 U.S.C. §§

17  605(e)(3)(C)(iii), 553(c).

18      In Joe Hand Promotions, Inc. v. Alvarado, CV F 10-0907

19  LJO JLT, 2011 WL 1740536 (E.D. Cal. May 4, 2011) (O'Neill, J.),

20  the court considered whether the defendants were individually

21  liable in the absence of evidence that they authorized the

22  allegedly pirated telecast.  Alvarado, 2011 WL 1740536, at *7.

23  Although there was no corporate defendant, the court analyzed the

24  same factors used to determine individual liability in those

25  cases where claims are brought against both a corporate entity

26  and an individual.  Id.  Here, in contrast, plaintiff is merely

27  trying to hold the organization in violation of anti-piracy laws

28  responsible, not attempting to assert liability against a

separate individual.  Thus, even if it is appropriate to apply
the heightened standard for individual liability under the anti-
piracy laws in a case with no corporate defendant, this case does
not involve questions of individual liability.

        "A signal pirate violates section 553 if he intercepts
a cable signal, he violates section 605 if he intercepts a
satellite broadcast.  But he cannot violate both by a single act
of interception." Manzano, 2008 WL 4542962, at *2.  Defendant
disputes that the Program was intercepted and shown at Miners
Ranch Saloon, (Def.'s Resp. to Pl.'s Undisputed Facts 2a (Docket
No. 18)), but he offers no evidence to contradict the affidavit
of plaintiff's investigator stating that the Program was
exhibited, (Guynes Aff. at 1).  In response to a special
interrogatory, defendant stated that "[i]t is believed that a
large antenna and a satellite dish" were destroyed in a fire at
Miners Ranch Saloon.  (Def.'s Resp. to Special Interrog. at 5.)
As a result of the fire, there are no records to identify any
satellite television service provider for the Saloon in 2010.
(Id.)  Defendant also noted that Miners Ranch Saloon did not and
does not have cable, (Riley Decl. in Supp. of Pl.'s Mot. Ex. 1
("Def.'s Resp. to Req. for Produc.") at 6 (Docket No. 15-4)),
although it did have a "legitimate and lawful television
service," (Albright Decl. ¶ 2).

        Defendant argues that a violation of § 553 or § 605
requires plaintiff to proffer evidence of an interception.
(See Pl.'s Opp'n at 2:19-3:21 (Docket No. 19).)  He contends that
the evidence plaintiff presents in support of its request for
summary judgment does not demonstrate that defendant intercepted

9

a television signal, but only that the Program was shown at
Miners Ranch Saloon.  (Id. at 3:22-25.)  A party violates § 553
through either the unauthorized interception or receipt of any
communication offered over a cable system.  47 U.S.C. §
553(a)(1).  The language of § 605 also appears to prohibit either
the interception or receipt of a satellite communication.  It
disallows a party, when unauthorized by the sender, from
intercepting a radio communication and then divulging or
publishing it.  47 U.S.C. § 605(a).  It also prohibits a party,
when unentitled to a radio communication, from receiving that
communication and using it for his own benefit or the benefit of
another.  Id.  Regardless of whether the unentitled reception of
a satellite communication would result in a violation of § 605,[1]
as will be shown below, plaintiff has met its burden to offer
sufficient evidence to show that defendant violated § 605 by
intercepting a satellite broadcast of the Program.

       As the Ninth Circuit has noted, signal piracy is a
"surreptitious venture" and direct evidence of interception may
be hard to come by.  Webb, 545 F.3d at 844 (9th Cir. 2008).

---

[1]      In this circuit, it would appear that § 605 may be
violated by either an interception or recept of a satellite
communication.  See Webb, 545 F.3d at 848 ("As we previously noted,
the original prohibitions of § 605 are now contained in § 605(a),
which makes it unlawful to 'receiv[e], assist[ ] in receiving,
transmit[ ], or assist[ ] in transmitting, any interstate or
foreign communication by wire or radio' without authorization.
47 U.S.C. § 605(a).  Section 605 also prohibits 'divulg[ing] or
publish[ing]' information gleaned from unauthorized signal
reception, or otherwise using that information for one's 'own
benefit or for the benefit of another not entitled thereto.'");
cf. Premium Sports Inc. v. Connell, 10 CIV. 3753 KBF, 2012 WL
691891, at *2 (S.D.N.Y. Mar. 1, 2012) (holding that there was no
violation of § 605 where friend received the broadcast of a
soccer game and then sent it to defendants via a "Slingbox"
because there was no "interception" of a signal or transmission).

Courts may thus rely on circumstantial evidence to prove unlawful interception.  Id.  There is no evidence before the court to put into dispute the evidence showing that the Program was exhibited at Miners Ranch Saloon.  Further, there was an antenna and satellite dish at the Saloon, and while it never had cable service, it did have a lawful television service.  The reasonable inference from this evidence is that the Program was intercepted via satellite service.

Such circumstantial evidence could readily be controverted by evidence that the Program was received through some other method, such as over the internet.  Defendant, however, has not offered any such evidence.  Thus, plaintiff has met its burden of showing that defendant violated § 605 by intercepting a satellite broadcast.  See McInnis, 2011 WL 1740109, at *7 (although plaintiff admitted that it did not know whether the unauthorized broadcast exhibited in defendants' tavern was intercepted via cable or satellite, the court held that plaintiff met its initial burden for purposes of summary judgment by showing that the broadcast was shown at the tavern without its permission); J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) ("Although the pleadings do not clearly state that the event originated as a satellite signal . . . they do assert that the defendants could not have intercepted the event without electronic decoding equipment and satellite coordinates necessary to receive the signal of the [e]vent.  The reference to satellite signals provides a sufficient basis to establish that the Fight originated with a radio transmission such that the defendants'

11

1  interceptions violated section 605." (citations omitted)).

2        Accordingly, because there is no genuine issue of

3  material fact as to defendant's liability under § 605, the court

4  must grant plaintiff's motion for summary judgment on that claim.

5  Because there is no evidence that defendant also intercepted or

6  received the Program via cable, the court must deny plaintiff's

7  motion for summary judgment on its § 553.[2]

8        2.   <u>Damages</u>

9        "[D]efendant strenuously contends that this case should

10  be put before a jury, even if it is only a trial regarding the

11  damages." (Def.'s Opp'n at 17:12-13.)  However, "[a]s the

12  Supreme Court held, over one hundred years ago, a summary

13  judgment proceeding does not deprive the losing party of its

14  Seventh Amendment right to a jury trial." <u>In re Slatkin</u>, 525

15  F.3d 805, 811 (9th Cir. 2008) (citing <u>Fid. & Deposit Co. of Md.</u>

16  <u>v. United States</u>, 187 U.S. 315, 319-21 (1902)).  Thus, even

17  assuming, as defendant contends, that there is a right to a jury

18  trial for § 605 claims, that right is not violated by summary

19  judgment when there are no issues of material fact.  <u>See Sengupta</u>

20  <u>v. Morrison-Knudsen Co., Inc.</u>, 804 F.2d 1072, 1077-78 n.3 (9th

21  Cir. 1986) (holding that the Seventh Amendment right to a jury

22  trial does not preclude summary judgment where there is no

23  genuine issue of material fact).

24        In their cross-motions for summary judgment the parties

25

26  _____

27        [2]   Defendant requested summary judgment on the issue of
   whether plaintiff could recover for violations of both §§ 605 and

28  553.  (Def's Mem. at 9:22-10:19 (Docket No. 16).)  Regardless of
   the appropriateness of this request, it is rendered moot by the
   court's conclusion that defendant violated § 605 and not § 553.

12

adopt conflicting stances on whether there are genuine issues of material fact as to damages issues.  Defendant requests a trial on damages, but argues that it is entitled to summary judgment denying enhanced statutory damages under § 605 or § 553. Plaintiff requests summary judgment granting damages for its statutory and conversion claims, but contends that there are disputed issues of material fact with respect to whether plaintiff may recover enhanced statutory damages.  Despite these contradictory positions, neither party has identified a single genuine issue of material fact bearing on the issue of damages. Where the facts are not in dispute, courts typically undertake to determine the amount of damages to be awarded on claims under §§ 553 and 605.  As will be shown below, while there are issues of law the court must consider in evaluating plaintiff's request for damages, there are no disputed facts that must be reserved for the jury to decide.

Plaintiff requests maximum statutory damages of $10,000 pursuant to § 605(e)(3)(C)(i)(II) and the maximum statutory enhancement of $100,000 pursuant to section § 605(e)(3)(C)(ii), for total damages of $110,000.  (Pl.'s Mem. at 9:14-22 (Docket No. 15).)  "[T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(3)(C)(i)(II).  "Courts in this circuit have granted widely varying awards ranging from near the minimum statutory award of $1,000 to near the maximum of $110,000, depending on such factors as the capacity of the establishment, the number of patrons in

13

attendance, and whether a cover charge was required for
entrance." J & J Sports Prods., Inc. v. Marcaida, 10-5125 SC,
2011 WL 2149923, at *3 (N.D. Cal. May 31, 2011).  Courts have
also considered whether the defendant has violated anti-piracy
laws before.  See, e.g., J & J Sports Prods., Inc. v. Ferreyra,
CIV S-08-128 LKK KJM, 2008 WL 4104315, at *1 (E.D. Cal. Aug. 28,
2008) (Karlton, J.) (awarding $100,000 where defendant was a
repeat offender).  Defendant argues that the goal of piracy
awards is deterrence, (Pl.'s Mem. at 11:10), and the parties both
cite to cases granting various combinations of statutory damages
and enhanced statutory damages.

On the night of the incident, the Program was broadcast
on five televisions. (Guynes Aff. at 1.)  There were between
twenty-four and twenty-six patrons in Miners Ranch Saloon, and
the capacity of the establishment was approximately eighty. (Id.
at 2.)  There is no evidence that the fight was advertised.
There is also no evidence that Miners Ranch Saloon charged a
cover charge to watch the fight, that it increased food or
beverage prices during the Program, or that defendant has
violated §§ 553 or 605 before.  Thus, the court awards $1,000 in
statutory damages.  See Joe Hand Promotions, Inc. v. Brown, CIV
S-10-0224 GEB, 2010 WL 4365537, at *4 (E.D. Cal. Oct. 27, 2010)
(Drozd, M.J.) (awarding $1,000 in statutory damages under similar
factual circumstances).

"[I]n any case in which the court finds that the
violation was committed willfully and for purposes of direct or
indirect commercial advantage or financial gain, the court in its
discretion may increase the award of damages, whether actual or

14

statutory, by an amount of not more than $100,000 for each

violation of subsection (a) of this section." 47 U.S.C. §

605(e)(3)(C)(ii).  Plaintiff notes that some cases have held that

violations are willful simply because "[s]ignals do not

descramble spontaneously, nor do television sets connect

themselves to cable distribution systems." (Pl.'s Mot. at 15:9-

11 (quoting Time Warner Cable of N.Y. City v. Googies

Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)).)

Other cases, however, require something more before awarding

enhanced damages for willfulness.  See, e.g., J & J Sports

Prods., Inc. v. Vazquez, 11-5448-SC, 2012 WL 3025916, at *5 (N.D.

Cal. July 24, 2012) (declining to award enhanced statutory

damages under § 605 where restaurant did not charge cover charge,

receipts were consistent with its regular sales, the broadcast

was not advertised or promoted, and defendants were not present

at the restaurant at the time the program was shown and no one

asked them for permission to show it); J & J Sports Prods. v.

Coyne, 857 F. Supp. 2d 909, 911 (N.D. Cal. 2012) (violation of §

553 was not willful where defendant did not know if ordering the

fight through his cable provider would be lawful, but failed to

take action to find out whether it was or not).

Defendant testified that to his knowledge there was no

interception or theft of a television signal. (Albright Decl. ¶

2.) He "was not personally involved in the day-to-day operations

of Miners Ranch Saloon, and for that reason [] was not in control

of what was being shown on the [televisions] . . . ." (Id.) He

did not authorize any interception of a television signal or the

display of television programming without properly paying for it.

15

1 (Id.)  Defendant also testifies that on the night of the
2 incident, there was no increase in sales or revenue compared to
3 similar days in the same time period.  (Id.)  None of these facts
4 are disputed by plaintiff.

5        In Vazquez, the court declined to award enhanced
6 statutory damages where the brother of one of the defendants'
7 employees lived above the defendants' taqueria, ordered the
8 sports program with an account authorized for residential use
9 only, and then brought his television into the taqueria where he
10 exhibited the program.  Vazquez, 2012 WL 3025916, at *2.
11 Defendants were not present at the time the program was shown at
12 the taqueria and it was uncontested that no one asked their
13 permission to do so.  Id. at *5.  The court explained that it did
14 "not see how Defendants could engage in willful infringement
15 through acts they knew nothing about.  For the same reasons, the
16 Court would be hard-pressed to find that the Defendants harbored
17 any 'purpose' of furthering a commercial advantage or reaping
18 private gain through acts of which they were wholly ignorant."
19 Id.

20        As in Vazquez, defendant's lack of knowledge regarding
21 the showing of the Program does not give rise to a willful
22 violation.  There is no evidence here as to who intercepted
23 and/or displayed the Program at Miners Ranch Saloon, but it is
24 undisputed that defendant did not give any employee or patron
25 permission to do so.  It would also be difficult to find that
26 defendant intended to exhibit the Program for financial benefit
27 when he had no knowledge of its exhibition.  The court therefore
28 declines to award any enhanced damages.  Accordingly, the court

will award $1,000 in damages on plaintiff's § 605 claim.

B.   Conversion Claim

1.   Defendant Committed Conversion

Under California law, conversion requires a showing of (1) ownership of a right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages. See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., 958 F.2d 896, 906 (9th Cir. 1992).  Traditionally, a claim for conversion lay only where the property alleged to be converted was tangible, but "courts in recent years have significantly relaxed this rule."  Don King Prods./Kingvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995); DirecTV, Inc. v. Pahnke, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law and granting plaintiff's motion for summary judgment for conversion).  "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant."  Gilman v. Dalby, 176 Cal. App. 4th 606, 615 n.1 (3d Dist. 2009).

The parties do not dispute that plaintiff was granted the exclusive commercial distribution rights to the Program and that it therefore had the right to possession of the property at the time of the events in question.  Thus, by showing the Program without plaintiff's authorization, defendant misappropriated plaintiff's property rights.

Defendant contends that plaintiff cannot establish the damages element of its conversion claim because plaintiff did not

17

provide the cost of the Program during discovery.  (Def.'s Opp'n
at 6:18-21.)  In plaintiff's initial disclosures, however, it
provided a copy of its "Rate Card," which lists the costs of
purchasing the rights to show the Program.  (Riley Decl. in Supp.
of Pl.'s Reply Ex. 1 (Docket No. 20-1).)

Accordingly, there is no genuine issue of material fact
as to whether defendant is liable for conversion and the court
will therefore grant plaintiff's motion for summary judgment on
that claim.

2.  <u>Damages</u>

Defendant requests summary judgment on plaintiff's
request for punitive damages. (Def.'s Mem. at 7:22-8:16.)
Plaintiff does not oppose this request as to its conversion
claim.  (Pl.'s Opp'n at 8:4-10.)  This is the only claim for
which plaintiff requested punitive damages.  (Compl. at 9:21-22.)
Accordingly, defendant's motion for summary judgment on
plaintiff's request for punitive damages on its conversion claim
will be granted.

Defendant is liable for the value of the property at
the time of the conversion.  Cal. Civil Code § 3336; <u>Krueger v.
Bank of Am.</u>, 145 Cal. App. 3d 204, 215 (2d Dist. 1983).
Plaintiff submits evidence showing that the price for a
commercial establishment the size of Miners Ranch Saloon to
broadcast the Program with plaintiff's authorization is $1,100.
(Riley Decl. in Supp. of Pl.'s Reply Ex. 1.)  Defendant contends
that allowing damages for both plaintiff's statutory claim and
its conversion claim would result in impermissible double
recovery.  (Def.'s Mot. at 10:22-11:23.)  Some courts in this

circuit generally award damages under both the statutory claim
and for conversion, although other districts have taken the
opposite approach.  Compare J & J Sports Prods., Inc. v.
Paolilli, 1:11-CV-680 LJO GSA, 2011 WL 6211905, at *3-4 (E.D.
Cal. Dec. 14, 2011) (awarding damages for both § 605 and
conversion claims), with J & J Sports Prods., Inc. v. J.R. 'Z
Neighborhood Sports Grille, Inc., 2:0903141 DCN RSC, 2010 WL
1838432, at *2 (D.S.C. Apr. 5, 2010) (denying plaintiff's claim
for recovery for conversion after awarding damages under § 605).

        At the hearing on this matter, counsel for plaintiff
explained that plaintiff seeks damages under its conversion claim
only for the value of the license to exhibit the Program.  To
avoid double recovery, the court did not compensate plaintiff for
the value of that license when making its determination of
statutory damages under § 605.[3]  See J.R. 'Z Neighborhood Sports
Grille, Inc., 2010 WL 1838432, at *2 (awarding damages both under
§ 605 and for conversion claim would result in double recovery).
It will therefore award plaintiff $1,100 in damages for its
conversion claim.  Accordingly, plaintiff's motion for summary
judgment on its request for damages for its conversion claim will

---

[3]     Defendant argues that because plaintiff must elect
either actual or statutory damages under § 605, to allow it to
recover for conversion damages on top of statutory damages would
disregard § 605's requirement that plaintiff make an election and
allow for double recovery. (Def.'s Mem. at 11:12-20.)  The Ninth
Circuit has rejected this argument in a similar context, however,
and allowed for damages awards under both the Copyright Act and
Lanham Act even though the Copyright Act requires that a
plaintiff elect actual or statutory damages and the recovery of
both a plaintiff's lost profits and disgorgement of the
defendant's profits is generally considered double recovery under
the Lanham Act.  Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40
F.3d 1007, 1010 (9th Cir. 1994).

1  be granted.  Likewise, defendant's motion for summary judgment as

2  to plaintiff's request for recovery under both its conversion and

3  statutory claims must be denied.

4        C.   UCL

5             1.   Defendant is Not Entitled to Summary Judgment on

6                  Plaintiff's UCL Claim

7        The UCL "prohibits unfair competition, including

8  unlawful, unfair, and fraudulent business acts." Korea Supply

9  Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003).  It

10 "establishes three varieties of unfair competition--acts or

11 practices which are unlawful, or unfair, or fraudulent. In other

12 words, a practice is prohibited as 'unfair' or 'deceptive' even

13 if not 'unlawful' and vice versa." Cel-Tech Commc'ns, Inc. v.

14 L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999) (internal

15 quotation marks and citation omitted).

16       Defendant requests summary judgment denying plaintiff's

17 UCL claim on the ground that while one of the available remedies

18 under that statute is restitution, plaintiff has no evidence of

19 any money acquired by defendant by unfair competition or any

20 money received by defendant specifically related to the

21 exhibition of the Program.  (Def.'s Mem. at 8:24-28.)  Contrary

22 to defendant's characterization of plaintiff's request for relief

23 under the UCL, plaintiff requested injunctive relief in addition

24 to restitutionary relief.  (See Compl. ¶ 35, 10:6.)  A plaintiff

25 need not prove eligibility for restitution in order to have

26 standing under the UCL to seek injunctive relief.  See Pom

27 Wonderful LLC v. Coca-Cola Co., 679 F.3d 1170, 1178-79 (9th Cir.

28 2012) ("standing under section 17204 (the UCL standing provision)

1  does not depend on eligibility for restitution" (citing <u>Kwikset</u>

2  <u>Corp. v. Superior Court</u>, 51 Cal. 4th 310 (2011)); <u>Clayworth v.</u>

3  <u>Pfizer, Inc.</u>, 49 Cal.4th 758, 790 (2010).  Because plaintiff

4  requested an additional remedy under the UCL that does not

5  require the showing defendant contends plaintiff has not made,

6  defendant's motion for summary judgment as to plaintiff's UCL

7  claim must be denied.

8              2.   <u>Attorney's Fees</u>

9         Defendant also requests summary judgment on plaintiff's

10  request for attorney's fees pursuant to California Code of Civil

11  Procedure section 1021.5.  (Def.'s Mem. at 9:4-18.)  Plaintiff

12  does not oppose this request.  (Pl.'s Opp'n at 9 n.5.)

13  Accordingly, defendant's motion for summary judgment on

14  plaintiff's request for attorney's fees pursuant to California

15  Code of Civil Procedure section 1021.5 will be granted.

16         IT IS THEREFORE ORDERED that:

17         (1) plaintiff's motion for summary judgment of its 47

18  U.S.C. §§ 553 and 605 claims be, and the same hereby is, GRANTED

19  IN PART with respect to its claim for violation of § 605 and

20  plaintiff is awarded $1,000 in statutory damages, and DENIED IN

21  PART with respect to its claim for violation of § 553;

22         (2) plaintiff's motion for summary judgment of its

23  conversion claim be, and the same hereby is, GRANTED and

24  plaintiff is awarded $1,100.00 in damages;

25         (3)  defendant's motion for summary judgment be, and

26  the same hereby is, GRANTED IN PART with respect to plaintiff's

27  requests for enhanced statutory damages under §§ 553 and 605,

28  punitive damages for conversion, and attorney's fees pursuant to

21

California Code of Civil Procedure section 1021.5; DENIED IN PART
with respect to plaintiff's UCL claim and its request to recover
under both its statutory and conversion claims; and MOOT as to
plaintiff's request for recovery under both 47 U.S.C. §§ 553 and
605.

DATED:  June 4, 2013

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

22